IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CV-40-D

| | |
|---|---|
| MICKEY LEE BISSETTE, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| RAIN & HAIL, L.L.C., and ) | |
| ACE PROPERTY AND CASUALTY ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendants. ) | |

On December 14, 2009, Mickey Lee Bissette, Jr. ("Bissette, Jr." or "plaintiff") filed suit in Nash County Superior Court against Rain & Hail, LLC, ("R&H") and Ace Property and Casualty Insurance Company ("Ace Insurance") (collectively, "defendants"). Bissette, Jr. alleges defendants failed to investigate and pay his crop insurance claim in a timely fashion. Bissette, Jr. alleges that defendants' conduct constituted a bad faith refusal to investigate and pay his crop insurance claim and unfair and deceptive trade practices, in violation of North Carolina law. Bissette, Jr. seeks compensatory, punitive, and treble damages. On February 2, 2010, defendants removed the action to this court [D.E. 6]. On January 12, 2011, defendants filed a motion for summary judgment or, alternatively, a motion to stay the action and compel arbitration and compliance with the Federal Crop Insurance Corporation's ("FCIC") procedures [D.E. 13]. On February 2, 2011, Bissette, Jr. filed a response in opposition to the motion for summary judgment, but did not respond to defendants' motion to compel arbitration. [D.E. 15–16]. As explained below, the action is stayed and the parties are ordered to complete arbitration.

I.

Bissette, Jr. and his father, Mickey Lee Bissette, Sr. ("Bissette, Sr."), are farmers in Nash County, North Carolina. See Bissette, Jr. Aff. 1. In 2005, Ace Insurance issued a multiple peril crop

insurance policy to Bissette, Sr., which R&H serviced. See Defs.' Mot. Summ. J., Goode Aff. ¶ 3–4 & Ex. A (Common Crop Insurance Policy). FCIC federally reinsured the policy, pursuant to the Federal Crop Insurance Act ("FCIA"), 7 U.S.C. §§ 1501, et seq. See Goode Aff. ¶ 2–3. FCIC is an agency within the United States Department of Agriculture ("USDA"), and it is responsible for regulating the crop insurance industry. See 7 U.S.C. § 1503. The USDA's Risk Management Agency ("RMA") regulates the FCIC, and RMA administers all programs under the FCIA. See 7 C.F.R. § 400.701.

On June 30, 2006, Bissette, Sr. executed a transfer of right to indemnity form in favor of plaintiff. Goode Aff. ¶ 4 & Ex. B (transfer of right to indemnity); see Bissette, Jr. Aff. 1.[1] The transfer gave Bissette, Jr. the right to receive any indemnity payments under the policy, subject to the same terms and provisions. Goode Aff. ¶ 4. The crop insurance policy is a uniform policy, with terms and conditions mandated by RMA and published in the Code of Federal Regulations. See 7 C.F.R. § 457.8; Goode Aff. ¶ 3. The policy and regulations describe the eligibility requirements for participation in the federal crop insurance program. Goode Aff. ¶ 5. RMA has sole authority to determine an individual's eligibility for insurance and maintains a database for notifying private insurance carriers of ineligible individuals. Id. & Ex. C (RMA Ineligible Tracking System Handbook).

On or about September 11, 2006, RMA notified defendants that Bissette, Sr. was not eligible for crop insurance. Id. ¶ 6 & Ex. D (Ineligible Tracking System Records). RMA determined that Bissette, Sr. was not eligible after another private insurer, Rural Community Insurance Services ("RCIS"), notified RMA that Bissette, Sr. had not paid his 2005 crop insurance premium in full. See Goode Aff. ¶ 11 & Ex. F. RMA's determination that Bissette, Sr. was not eligible for crop insurance was retroactively effective as of February 28, 2006. Id. ¶ 6 & Ex. D. As a result, on September 29,

---

[1] The policy was a continuous policy, which meant that it automatically renewed in 2006. Goode Aff. ¶ 4.

2006, defendants notified Bissette, Sr. that his insurance policy had been cancelled, effective February 28, 2006. Id. ¶ 6 & Ex. E. Because defendants cancelled the policy as of February 28, 2006, defendants considered the June 2006 transfer of indemnity to Bissette, Jr. ineffective. Id. ¶ 6.

Bissette, Jr. disagreed with the cancellation of his policy and wrote a letter to defendants, requesting a review of his policy. Bissette, Jr. Aff. 1 & Ex. A. After defendants cancelled the policy, Bissette, Jr. attempted to file a crop insurance claim for his damaged tobacco crop. Id. ¶ 8; Bissette, Jr. Aff. 1. Defendants initially refused to pay the claim because Bissette, Jr.'s policy had been cancelled and, at that time, the crops were not covered under the policy. Goode Aff. ¶ 8.

Bissette, Sr. appealed RMA's eligibility determination and initiated an arbitration proceeding against RCIS. See id., Exs. F & I. Bissette, Sr. won his arbitration claim against RCIS. See id., Ex. F.[2] As a result, RMA notified Bissette, Sr. that it was rescinding the original ineligibility determination. See id. RMA retroactively reinstated Bissette, Sr.'s eligibility as of February 28, 2006. Goode Aff. ¶ 7. On or about July 24, 2007, RMA notified defendants that Bissette, Sr.'s eligibility had been reinstated. Id. Once defendants received RMA's notice of reinstatement, defendants reinstated the crop insurance policy and the transfer of indemnity to Bissette, Jr. Id. On August 16, 2007, defendants paid Bissette, Jr.'s crop insurance claim for his damaged tobacco crop. Id. ¶ 8 & Ex. G. In February 2008, Bissette, Jr. submitted a notice of loss on his 2006 soybean crop, which was also insured under the crop insurance policy. Id. ¶ 9. On March 11, 2008, defendants paid Bissette, Jr.'s crop insurance claim for soybean losses. Id. & Ex. H. Bissette, Jr. acknowledges that defendants have paid his crop insurance claims. Bissette, Jr. Aff. 1–2.

On December 14, 2009, Bissette, Jr. filed suit, claiming that the delay in receiving his indemnity payments ruined his credit, forced him to borrow money from his father, caused him to

---

[2] Defendants were not involved in Bissette, Sr.'s arbitration proceeding against RCIS. See id. ¶ 11 & Exs. F & I.

3

lose his family's medical insurance, and caused him to get behind on his house and car payments. Id. Bissette, Jr. claims that defendants' actions violated the terms of the policy and federal crop insurance regulations. Pl.'s Mem. Opp'n Mot. Summ. J. 1–3. In response, defendants deny the allegations and move for summary judgment. Alternatively, they note that Bissette, Jr. has not initiated or completed arbitration proceedings against defendants. They also point out that Bissette, Jr. has not provided the court with an FCIC determination that defendants failed to comply with the terms of the policy or FCIC procedures. Thus, defendants seek to compel arbitration.

II.

Bissette, Jr.'s crop insurance policy mandates that any dispute regarding a determination made by defendants must be submitted to arbitration. Bissette, Jr. Policy ¶ 20(a); see 7 C.F.R. § 457.8, ¶ 20(a).[3] Mandatory arbitration provisions in crop insurance policies are valid and

---

[3]Bissette, Jr.'s crop insurance policy, which is codified at 7 C.F.R. § 457.8, states:

20. **Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review.**
   (a)   If you and we fail to agree on any determination made by us . . . the disagreement may be resolved through mediation in accordance with section 20(g). If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA), except as provided [by the policy or FCIC] . . . .
      (1)   All disputes involving determinations made by us . . . are subject to mediation or arbitration. However, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either you or we must obtain an interpretation from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC.
         (I)    Any interpretation by FCIC will be binding in any mediation or arbitration.
         (ii)   Failure to obtain any required interpretation from FCIC will result in the nullification of any agreement or award.

4

    (iii) An interpretation by FCIC of a policy provision is considered a rule of general applicability and is not appealable. If you disagree with an interpretation of a policy provision by FCIC, you must obtain a Director's review from the National Appeals Division in accordance with 7 CFR 11.6 before obtaining judicial review in accordance with [section 20](e).

      * * * *

(b) Regardless of whether mediation is elected:
  (1) The initiation of arbitration proceedings must occur within one year of the date we denied your claim or rendered the determination with which you disagree, whichever is later;
  (2) If you fail to initiate arbitration in accordance with section 20(b)(1) and complete the process, you will not be able to resolve the dispute through judicial review;
  (3) If arbitration has been initiated in accordance with section 20(b)(1) and completed, and judicial review is sought, suit must be filed not later than one year after the date the arbitration decision was rendered; and
  (4) In any suit, if the dispute in any way involves a policy or procedure interpretation, . . . an interpretation must be obtained from FCIC . . . . Such interpretation will be binding.
(c) Any decision rendered in arbitration is binding on you and us unless judicial review is sought in accordance with section 20(b)(3). Notwithstanding any provision in the rules of the AAA, you and we have the right to judicial review of any decision rendered in arbitration.

      * * * *

(f) In any mediation, arbitration, appeal, administrative review, reconsideration or judicial process, the terms of this policy, the Act, and the regulations published at 7 CFR chapter IV, including the provisions of 7 CFR part 400, subpart P, are binding. Conflicts between this policy and any state or local laws will be resolved in accordance with section 31. If there are conflicts between any rules of the AAA and the provisions of your policy, the provisions of your policy will control.

      * * * *

5

enforceable. See, e.g., Great Am. Ins. Co. v. Moye, 733 F. Supp. 2d 1298, 1302–03 (M.D. Fla. 2010); In re 2000 Sugar Beet Crop Ins. Litig., 228 F. Supp. 2d 992, 999 (D. Minn. 2002); Ledford Farms, Inc. v. Fireman's Fund Ins. Co., 184 F. Supp. 2d 1242, 1244–45 (S.D. Fla. 2001); Nobles v. Rural Cmty. Ins. Servs., 122 F. Supp. 2d 1290, 1293–1301 (M.D. Ala. 2000). The policy states that, "if you fail to initiate arbitration in accordance with section 20(b)(1) and complete the process, you will not be able to resolve the dispute through judicial review." Bissette, Jr. Policy ¶ 20(b)(2); see 7 C.F.R. § 457.8, ¶ 20(b)(2). "This command would be meaningless if it allowed [a plaintiff] to file suit without first complying with the provision requiring arbitration of factual disputes." Nobles, 122 F. Supp. 2d at 1296; see Ledford, 184 F. Supp. 2d at 1245 (noting that the arbitration clause serves as a condition precedent to suit). Bissette, Jr. does not offer any basis for resisting defendants' motion to compel arbitration. Therefore, the court orders Bissette, Jr. to submit to arbitration, in accordance with the policy. See, e.g., In re 2000 Sugar Beet, 228 F. Supp. 2d at 999; Ledford, 184 F. Supp. 2d at 1245; Nobles, 122 F. Supp. 2d at 1301; cf. Pl.'s Mem. Opp'n Mot. Summ. J. 2–3 (identifying factual disputes).

---

(I)  In a judicial review only, you may recover attorneys fees or other expenses, or any punitive, compensatory or any other damages from us only if you obtain a determination from FCIC that we, our agent or loss adjuster failed to comply with the terms of this policy or procedures issued by FCIC and such failure resulted in you receiving a payment in an amount that is less than the amount to which you were entitled. . . .

\* \* \* \*

31. **Applicability of State and Local Statutes.**
    If the provisions of this policy conflict with statutes of the State or locality in which this policy is issued, the policy provisions will prevail. State and local laws and regulations in conflict with federal statutes, this policy, and the applicable regulations do not apply to this policy.

Defs.' Mot. Summ. J., Ex. A (Common Crop Insurance Policy, Basic Provisions, hereinafter "Bissette, Jr. Policy"); see 7 C.F.R. § 457.8 (codifying the common crop insurance policy).

6

Case 5:10-cv-00040-D   Document 17   Filed 09/02/11   Page 6 of 7

The arbitrator may make findings and award relief as provided under the policy, federal statutes, and federal regulations. If the parties still disagree, the court will then review the arbitration award. See, e.g., Harrell & Owens Farm v. Fed. Crop Ins. Corp., No. 4:09-CV-217-FL, 2011 WL 1100265, at *4 (E.D.N.C. Mar. 23, 2011) (unpublished); Great Am. Ins. Co., 733 F. Supp. 2d at 1302. Accordingly, the court grants defendants' motion to stay the action and compel Bissette, Jr. to submit to binding arbitration in compliance with the crop insurance policy and applicable federal statutes and regulations.

III.

In sum, the court GRANTS defendants' motion to compel arbitration [D.E. 13]. Bissette, Jr. must submit any dispute regarding defendants' actions to arbitration before he may seek judicial review. Thus, the court stays proceedings and compels Bissette, Jr. to arbitrate his claims in accordance with the policy and FCIC procedures. The court retains jurisdiction but places the action on inactive status. The parties shall notify the court once arbitration is complete.

SO ORDERED. This 2 day of September 2011.

JAMES C. DEVER III
United States District Judge